ASBURY F. FAWSETT

v.

THE NATIONAL LIFE INSURANCE COMPANY OF THE UNITED STATES ET AL.

</div>

PROMISSORY NOTE—INDORSEMENT.—Where the payee of a note indorses it in a form showing an intention to pass all his interest, such indorsement imports a consideration received by him, and wherever that is the case, the property in the instrument will be deemed to have passed absolutely to the assignee. So, an indorsement " Pay to the 2d National Bank of Monmouth for collection for account of George F. Harding, executor of Abner C. Harding," and signed by the payee, passed all his interest in the note.

APPEAL from the Superior Court of Cook county; the Hon. S. M. MOORE, Judge, presiding. Opinion filed March 2, 1880.

August 27, 1872, the South Chicago Land and Building Association made a series of six promissory notes, amounting in all to $48,000, payable to the order of Asbury F. Fawsett, with interest at 8 per cent., and secured the same by deed of trust upon its real estate. Two of these notes, for $8,125.00 each, payable one in six and the other in seven years from date, were respectively indorsed by Fawsett, the payee, thus:

" Pay to the 2d National Bank of Monmouth for collection for account of George F. Harding, executor of Abner C. Harding, deceased.

<div style="text-align:right">" A. F. Fawsett."</div>

The notes thus indorsed were delivered to the bank without recourse. George F. Harding, having them in his possession thus indorsed, before maturity, in the usual course of business, and for full consideration, sold and indorsed them to the National Life Insurance Co. of the United States of America, the latter taking them without any notice of any claim on the part of Fawsett other than may be imported by the form of his indorsement to the bank. A controversy having arisen between Fawsett and said Life Insurance Company respecting the ownership and right to receive payment of said notes, the Land and Building Association, the maker, filed a bill of interpleader, and said respective claimants of the notes came in and interpleaded. On the hearing upon pleadings and proofs, a decree was passed finding the Life Insurance Company a *bona fide* holder for value, without notice, and as such entitled to receive payment of said notes. From that decree Fawsett appealed to this court.

Messrs. Gardner & Schuyler, for appellant; that assignment of negotiable paper is purely a statutory regulation, cited Ryan v. May, 14 Ill. 49; Fortier v. Dorst, 31 Ill. 212; Badgley v. Votrain, 68 Ill. 25.

The note in question was not legally transferred: Best v. Nokomis Bank, 76 Ill. 608; Barker v. Prentiss, 6 Mass. 430; Potter v. Mer. Bank, 28 N. Y. 641; Reanur v. Bell, 79 Pa. St. 292; Lawrence v. Russell, 77 Pa. St. 460; Rock Co. Bank v. Hollister, 21 Minn. 385; Merritt v. Duncan, 7 Heisk. 156; Atkins

v. Cobb, 56 Ga. 86; Caldwell v. Evans, 5 Bush, 380; Payne v. Flournoy, 29 Ark. 500.

Where a principal directs his agent to pay money to a third party, the direction may be countermanded before it is executed: Evans on Agency, 327; Williams v. Everitt, 14 East. 582; Scott v. Porcher, 3 Merivale, 652; Brend v. Hampshire, 1 M. & W. 365; Wedlake v. Hurley, 1 C. & J. 83; Yates v. Bell, 3 B. & Ald. 643; Barker v. Prentiss, 6 Mass. 430; Potter v. Mer. Bank, 28 N. Y. 641.

An indorsement of a note for collection is restrictive, and suspends negotiability: Ancher v. Bank of England, Doug. 637; Sigourney v. Lloyd, 8 B. & C. 622; Sigourney v. Lloyd, 5 Bing. 525; Snee v. Prescott, 1 Atk. 245; Treuttal v. Bavandon, 8 Taunt. 100; Blaine v. Bourne, 11 R. I. 119; Sweeney v. Easter, 1 Wall. 166; Lee v. Chillicothe Bank, 1 Bouv. 387; Leary v. Blanchard, 48 Me. 269; Cecil Bank v. Farmers Bank, 22 Md. 148; Power v. Finnie, 4 Cal. 411; Brown v. Jackson, 1 Wash. C. C. 512; Best v. Nokomis Bank, 76 Ill. 608; Lock v. Leonard Silk Co. 37 Mich. 479.

An assignor of a note taking it by an equitable title, takes it with all the equities existing against it: Olds v. Cummings, 31 Ill. 189; Fortier v. Darst, 31 Ill. 212; Peck v. Bligh, 37 Ill. 319; Walker v. Dement 42 Ill. 272; Sumner v. Waugh, 56 Ill. 531.

Messrs. HUTCHINSON & LUFF, for appellees; as to the rights of a purchaser of negotiable paper in good faith before maturity, cited Johnson v. Way, 27 Ohio St. 374; Shreeves v. Allen, 79 Ill. 553; Comstock v. Hannah, 76 Ill. 530; Hamilton v. Marks, 63 Mo. 167; Hotchkiss v. National Bank, 21 Wall. 354.

The endorsements are not restrictive: Buckley v. Johnson, 3 Exch. 135; Murrow v. Stewart, 8 Moo. P. C. 267; Byles on Bills, 157; Edie v. East India Co. 2 Burrows, 1216; Rev. Stat. Ch. 98; §§ 3, 4, 5.

A note endorsed for collection and afterwards returned to the owner may be negotiated by him: McLemore v. Hawkins. 46 Miss. 715; Atkins v. Cobb, 56 Ga. 86.

McAllister, J.   The principal, and I may say controlling question for decision in this case is:  Was the endorsement of the notes in question by the payee Fawsett such an absolute assignment of them as passed their negotiable quality to the indorsee?  It reads:  "Pay to the Second National Bank of Monmouth, for collection, for the account of George F. Harding, executor of Abner C. Harding, deceased."

The solution of that question involves a consideration of some of the rules of law respecting the nature of negotiable instruments, and their transmission from one to another, with the incidents attending such transfers.   Kent says: "If a bill or note be absolutely assigned, so as to pass the whole instrument to the indorsee, its negotiable quality would pass with it; and the better opinion would seem to be that its negotiability could not be impeded by any restriction contained in the indorsement. But where the indorsement is a mere authority to receive the money for the use or according to the directions of the indorser, it would be evidence that the indorsee did not give a valuable consideration, and was not the absolute owner."   3 Com. 92.

The rule embraced in the last branch of that quotation, is expressly recognized in Best v. The Nokomis National Bank, 76 Ill. 608, where the court in the most guarded language says: "Where the indorsements on the bills are shown to have been for collection merely, and for no other purpose, they will not transfer the title."

It will be borne in mind that the original contracts, the notes, are in legal effect to pay such person or persons as the payee, or his assignee or their assignees, shall direct; and there is as much privity between the last indorser and the last assignee as between the maker and the first payee.   Where the payee assigns over a promissory note, he does it by the statute; being a chose in action, it is not assignable by the general law, and the indorsement is a part of the original contract, and is incidental and appurtenant to it in the nature of it, and must be understood and interpreted to be made in the same manner as the original note was made; and the indorsee holds it in the same manner, and with the same privileges, qualities and ad-

.vantages as the original payee held it; that is, as an assignable negotiable note, which he may indorse over to another, and that other to a third, and so on, at pleasure. Wilmot, J., in Edie v. East India Co., 2 Burrows, 1226, a case in which it was held that where the payee omitted from his indorsement the word "order," such an omission would not affect the subsequent negotiability of the bill or note.

The act of endorsement is something to which the law attaches certain effects. It has a two-fold operation: First, it operates as an assignment; and, upon delivery, the contract is executed and the transfer complete, if the assignment be of the payee's entire interest in the note. Secondly, it has a certain executory operation from which arises a liability not necessary here to be specified.

We now recur to the question whether the negotiable qualities of the notes above alluded to, passed by the assignment under consideration. It makes no difference that the endorsement to the bank omits the words "or order"; but the true question is: Did that assignment pass all of Fawsett's interest in the notes; or, in other words, does it show any other intention on its face? For that is really what is meant by Kent, when he says: "If the bill or note be absolutely assigned, so as to pass the whole instrument to the indorsee, its negotiable quality would pass with it." What is there on the face of that indorsement to show that the indorser reserved any interest in the note to himself? It says: "Pay to the 2nd National Bank, etc., for collection." But "for collection" for whom? Not himself; but for account of George F. Harding. "For account of" is synonymous with "for the use," or "for the benefit" of George F. Harding. 2 Parsons on Bills and Notes, 21. This is far different from a mere authority to receive the money for the indorser's own benefit. Let us recur again to the observations of Justice Wilmot, in the case from Burrows, above referred to. He said: "There is a great deal of difference between giving a naked authority to receive the money and transferring the note over by indorsement, and I doubt whether he can limit his indorsement of it by way of assignment or transfer to another so as to preclude his assignee from

assigning it over as a thing negotiable.   For the assignee pur-
chases it for a valuable consideration; and therefore purchases
it with all its privileges, qualities and advantages, one of which
is its negotiability.   To be sure he may give a mere naked
authority to a person ' to receive it for him.'   He may write
upon it: ' Pray pay the money to my servant for my use ';
or use such expressions as necessarily import that he does not
mean to indorse it over, but is only authorizing a particular
person to receive it for him and for his use.   In such case, it
would be clear that no valuable consideration had been paid
him.   But at least that intention must appear upon the face of
the indorsement."   2 Burr. 1226.

Instead of it appearing on the face of this indorsement that
Fawsett's intention was that the bank should receive the money
for him or his use, such an intention is directly negatived by
the appropriation of it to a third person, which, of itself, divests
the assignor of all his interest in the notes.   We understand the
result of the above observations of Wilmot, J., and of all the
authorities, to be that where the payee indorses in a form show-
ing an intention to pass all his interest, such indorsement
imports a consideration received by him; and wherever that is
the case, the property in the instrument will be deemed to have
passed absolutely to the assignee, and that is a case of "indorsing
the paper over " as contradistinguished from creating a mere
agency for the indorser's own benefit.   In the very nature of the
original contract, as above stated, it would seem that such an
indorsing over, divesting the payee of all his interest, would carry
with it the negotiable qualities of the notes.   To illustrate:
suppose Fawsett's indorsement had said: " Pay to the 2nd
National Bank of Monmouth, for account of George F. Hard-
ing."   Such an indorsement would pass the indorser's whole
interest, would import a consideration received, and would carry
with it the negotiable qualities of the notes.   The bank, how-
ever, would be regarded as trustee for Harding, the beneficiary.
It is true, the trust is stamped upon the paper, and every per-
son dealing with it thus indorsed would be bound to take notice
of such trust.   While the notes in the hands of the bank would
still retain their negotiability, yet there could be no use made

of them in violation of the trust, but it could, by indorsing them, transfer the title, and would then hold the proceeds for Harding, and be accountable to him for them. In such case, can it be doubted that an indorsement by both trustee and beneficiary where the latter wished to realize from them, would transfer a title which, if taken by the indorsee, *bona fide* for value, before maturity, in the usual course of business, without notice, would be indefeasible as against any claim of the payee Fawsett?

Now, inasmuch as the latter, by the indorsement as made, passed all his interest in the notes, what difference can it make that the bank took them for collection for the use of Harding, instead of generally? It would be a trustee, in either case, for a third person. Counsel for appellee have furnished us with a case contained in the Reporter for December, 1879, page 792, decided last October by the Court of Appeals of New York, which is a very instructive one upon several of the propositions involved in an analysis of this present case. The title of it is Hook v. Pratt, and was an action upon a draft drawn by the defendant's testator upon an incorporated company, payable to the drawer's own order, and specially indorsed by him thus: " Pay to the order of Mrs. Mary Hook, for the benefit of her son Charlie." The point was raised that this indorsement was restrictive, and did not import a consideration. The court, by Rapallo, J., said:

"As a general rule, an indorsement of a negotiable bill which purports to pass the title to the bill to the indorsee, imports a consideration, and the burden of proving want of consideration rests upon the party alleging it. The restrictive indorsements which are held to negative the presumption of a consideration are such as indicate that they are not intended to pass the title, but merely to enable the indorsee to collect for the benefit of the indorser; such as indorsements ' for collection;' and others showing that the indorser is entitled to the proceeds. These create merely an agency, and negative the presumption of the transfer of the bill to the indorsee for a valuable consideration; but when the indorsement purports to pass the title to the bill from the indorser, and divest him of all beneficial interest

therein, a consideration for such transfer is presumed.    All the cases cited by the counsel for appellant rest upon these principles.    The citation from 3 Kent's Com. 92, states the principle to be that when the indorsement is a mere authority to receive the money for the use according to the direction of the indorser, it is evidence that the indorsee did not give a valuable consideration for it, and is not the absolute owner."

" This accords with the statement of the principle by Wilmot, J., in Edie v. East India Co. 2 Burr. 1227.    So an indorsement 'Pay to S. W. or order, for our use.'   Sigourney v. Wilson, 8 B. & C. 622, was held to create a mere agency, and the addition even of the words ' for value received' to such an indorsement has been held not to vary its effect.    Wilson v. Holmes, 5 Mass. 543.    In Edie v. East India Co. 2 Burr. 1221, the examples of restrictive indorsements, put by way of illustration, are:   ' Pay to my steward, and no other person;' ' Pay to my servant for my use.'    These show that there was no other intention to pass the title to the bill, and same effect has been given to an indorsement: ' Pay to P. only.'    It was held that these words indicated that the indorsee was agent only, and paid no consideration for the bill, as a purchaser would not have accepted such an indorsement.    Power v. Finnie, 4 Call. 411."

" But an indorsement to one person for the benefit of another affords no such indication.    The indorser parts with his whole title to the bill, and the presumption is, that he does so for a consideration.    *    *    *    In the present case, the indorsement did not purport to restrain the indorsee from negotiating the draft, for it was: ' Pay to the order of Mrs. Mary Hook for the benefit of her son Charlie?'    She was constituted trustee of her son, and held the legal title.    3 Kent Com. 80.    The indorsement gave notice of the trust; so that if she had passed it off for her own debt, or in other manner indicating that the transfer was in violation of the trust, her transferee would take it subject to the trust.    But there was nothing reserved in the drawer or indorser.    He retained no interest in it.    The presumption is that the draft was drawn and indorsed by him for a consideration received either from the indorsee or the fiduciary."

The authorities are all one way, since the case of Edie v. East India Co. *supra*, that the omission of the words "order of" in no wise affect the subsequent negotiability of the bill or note; the only test being whether the indorsement evinces the intention to pass the payee's whole interest. If it does, then it imports a consideration, and the title passes, carrying with it the negotiable qualities of the instrument. The point of distinction between this and all other cases we have seen lies in this indorsement being to the bank "for collection" for the benefit of Harding, instead of to the bank generally for his benefit. We have attempted to analyze the question in the light and by the tests of settled principles; and although our view is, as we think, more in consonance with the spirit and policy of our system of commercial law than that presented by appellant's counsel, still the Supreme Court might, from the distinctive features of this indorsement just pointed out, arrive at a different result.

The question is of such importance it should be authoritatively settled by the court of last resort. But from convictions produced and strengthened by thought and investigation, though not entirely free from doubt, we deem it our better course to affirm the decree of the court below, and it will accordingly be affirmed.

<div align="right">Affirmed.</div>